*This opinion is subject to revision before publication*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

————————

### UNITED STATES
Appellant

**v.**

### Daniel H. CHIN, Staff Sergeant
United States Air Force, Appellee

**No. 15-0749**

Crim. App. No. 38452

Argued January 13, 2016—Decided April 26, 2016

Military Judge: Joshua E. Kastenberg

For Appellant: *Major Matthew J. Neil* (argued); *Colonel Katherine E. Oler* and *Gerald R. Bruce*, Esq. (on brief).

For Appellee: *Captain Travis L. Vaughan* (argued).

Amici curiae for Appellant: *Colonel Mark H. Sydenham*, *Major A. G. Courie III*, and *Captain Jihan Walker* (on brief)—for the United States Army Appellate Government Division; *Colonel Mark K. Jamison*, USMC, *Major Suzanne M. Dempsey*, USMC, and *Lieutenant Amy L. Freyermuth*, JAGC, USN (on brief)—for the United States Navy and Marine Corps Appellate Government Division; *Stephen P. McCleary*, Esq. (on brief) and *Lieutenant Tereza Z. Ohley*—for the United States Coast Guard Appellate Government Division.

Amicus curiae for Appellee: *Colonel Stephen C. Newman*, USMC, and *Major Zachary D. Spilman*, USMCR (on brief)—for the United States Marine Corps Defense Services Organization.

Judge RYAN delivered the opinion of the Court, in which Chief Judge ERDMANN and Senior Judge SENTELLE joined. Judge STUCKY filed a separate dissenting opinion, in which Judge OHLSON joined.

————————

Judge RYAN delivered the opinion of the Court.[1]

---

[1] Senior Judge David B. Sentelle, of the United States Court of Appeals for the District of Columbia Circuit, sat by designation, pursuant to Article 142(f), Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 942(f) (2012).

The Government appeals the United States Air Force Court of Criminal Appeals' (AFCCA) decision, pursuant to its review under Article 66(c), Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 866 (2012), not to approve certain specifications because they constituted an unreasonable multiplication of charges, despite Appellee's pretrial agreement (PTA), which waived all waivable motions. *United States v. Chin*, No. ACM 38452 (recon), 2015 CCA LEXIS 241, 2015 WL 4039595 (A.F. Ct. Crim. App. June 12, 2015) (unpublished). Because we conclude that a case is subject to a complete appellate review by a Court of Criminal Appeals under Article 66(c), UCMJ, unless, after trial and sentencing, an accused waives appellate review altogether pursuant to Article 61, UCMJ, 10 U.S.C. § 861 (2012), we affirm the decision of the AFCCA.

## I. BACKGROUND

The Government and Appellee signed a PTA that included a "waive all waivable motions" provision and limited Appellee's punishment to a maximum of twenty-four months of confinement and a bad-conduct discharge. At trial, the military judge specifically addressed the "waive all waivable motions" provision. Defense counsel stated that they "would have raised a multiplicity motion." After determining that "multiplicity motions" were waived as part of the PTA, the military judge approved the PTA and convicted Appellee, consistent with his pleas, of six specifications of failure to obey a lawful general order or regulation, seven specifications of dereliction of duty for failing to store and protect classified information and unauthorized disclosure of that information, one specification of larceny of military property, and five specifications of unauthorized retention and failure to deliver documents relating to the national defense in violation of Articles 92, 121, 134, UCMJ, 10 U.S.C. §§ 892, 921, 934 (2012). Appellee was sentenced to twelve months of confinement, forfeiture of all pay and allowances, reduction to pay grade E-2, and a bad-conduct discharge. The convening authority approved only ten months of confinement but otherwise approved the sentence as adjudged.

On April 7, 2015, the AFCCA dismissed and merged various charges and specifications, citing the doctrine of unreasonable multiplication of charges. *United States v. Chin*, No.

ACM 38452, 2015 CCA LEXIS 140, at*2, 2015 WL 2064411, at *1 (A.F. Ct. Crim. App. Apr. 7, 2015) (unpublished). The AFCCA reassessed Appellee's sentence and approved the same sentence as originally adjudged by the convening authority. 2015 CCA LEXIS 140, at *33, 2015 WL 2064411, at *11. After granting the Government's motion for reconsideration, on June 12, 2015, the AFCCA reaffirmed its decision. *Chin*, 2015 CCA LEXIS 241, at *7 n.2, *10–11, 2015 WL 4039595, at *2 n.2, *3. The AFCCA noted that while, "[o]rdinarily, an affirmative waiver of a claim of multiplicity and unreasonable multiplication of charges would end [the] inquiry," it declined to apply waiver in this case because "Article 66(c) empowers the service courts to consider claims of multiplicity or unreasonable multiplication of charges even when those claims have been waived." *Chin*, 2015 CCA LEXIS 241, at *9–11, 2015 WL 4039595, at *3. Furthermore, the AFCCA observed that "[t]his deviation from our past treatment and application of waiver is warranted by the facts of this case .... in that … the charging scheme grossly exaggerates the appellant's criminality," 2015 CCA LEXIS 241, at *12, 2015 WL 4039595, at *4. The AFCCA then dismissed three specifications as being an unreasonable multiplication of charges for findings and merged five specifications for sentencing. 2015 CCA LEXIS 241, at *19–31, *35, 2015 WL 4039595, at *6–9, *11. In its reassessment of Appellee's sentence, the AFCCA approved the adjudged sentence. 2015 CCA LEXIS 241, at *31–35, 2015 WL 4039595, at *10–11.

## II. DISCUSSION

### A.

The scope and meaning of both Article 66(c), UCMJ, and Article 61, UCMJ, are matters of statutory interpretation, questions of law reviewed de novo. *United States v. Schloff*, 74 M.J. 312, 313 (C.A.A.F. 2015), *cert. denied,* 136 S. Ct. 915 (2016).

We agree that as a general matter "[w]hen an error is waived, … the result is that there is no error at all and an appellate court is without authority to reverse a conviction on that basis." *United States v. Weathers*, 186 F.3d 948, 955 (D.C. Cir. 1999); *see also United States v. Olano*, 507 U.S. 725, 732–34 (1993). This rule is consistent with the "limited

power" language of Federal Rule of Criminal Procedure 52(b). *Olano*, 507 U.S. at 731–33. In line with this precedent and this Court's more circumscribed statutory authority, we have held that an appellant may not raise on appeal, and that we cannot rectify, an error that was waived at trial. *United States v. Campos,* 67 M.J. 330, 332–33 (C.A.A.F. 2009); *United States v. Gladue*, 67 M.J. 311, 313 (C.A.A.F. 2009).

However, this "ordinary" rule does not apply to a CCA's wholly dissimilar statutory review. Article 66(c), UCMJ, requires that the CCAs conduct a plenary review and that they "affirm only such findings of guilty and the sentence or such part or amount of the sentence, as [they] find[] correct in law and fact and determine[], on the basis of the entire record, should be approved." Article 66(c), UCMJ; s*ee also United States v. Nerad*, 69 M.J. 138, 141–44 (C.A.A.F. 2010); *United States v. Quiroz,* 55 M.J. 334, 338 (C.A.A.F. 2001); *United States v. Claxton*, 32 M.J. 159, 162 (C.M.A. 1991); *United States v. Cole*, 31 M.J. 270, 272 (C.M.A. 1990); *United States v. Evans*, 28 M.J. 74, 75–76 (C.M.A. 1989); *United States v. Britton*, 26 M.J. 24, 26–27 (C.M.A. 1988). A complete Article 66, UCMJ, review is a "substantial right" of an accused, *United States v. Jenkins*, 60 M.J. 27, 30 (C.A.A.F. 2004), and a CCA may not rely on only selected portions of a record or allegations of error alone. *See United States v. Adams*, 59 M.J. 367, 372 (C.A.A.F. 2004); *see also United States v. Roach*, 66 M.J. 410, 412 (C.A.A.F. 2008) ("[T]he scope of review by the [CCA] differs in significant respect from direct review in the civilian federal appellate courts.").

"If the sentence approved by the convening authority includes capital punishment, a punitive discharge, or confinement for one year or more, [Article 66(c), UCMJ,] provides for mandatory review," and the CCAs have an "affirmative obligation to ensure that the findings and sentence in each such case are 'correct in law and fact … and should be approved.'" *United States v. Miller*, 62 M.J. 471, 472 (C.A.A.F. 2006) (alteration in original) (citation omitted). There is no "waiver" exception in the statute, nor do we think reading one in makes sense given the existence of Article 61, UCMJ, and its associated rules.

While an accused is prevented from raising an issue by a "waive all waivable motions" provision, an accused has no authority to waive a CCA's statutory mandate unless, through Article 61, UCMJ, procedures, the accused waives the right to appellate review altogether — and that election cannot be made until after the trial and sentencing. *See also* Rules for Courts-Martial (R.C.M.) 1110(a); R.C.M. 1110(f)(1). Because Article 61, UCMJ, is the exclusive means by which an accused can waive the right to a complete appellate review, *Miller*, 62 M.J. at 472, that right cannot be waived in a PTA, even when a "waive all waivable motions" provision is given full effect. *See* R.C.M. 705(c)(1)(B) (proscribing the enforcement of terms in a PTA that would deprive an accused of certain rights, including "the complete and effective exercise of post-trial and appellate rights"); *see also United States v. Smith*, 44 M.J. 387, 391 (C.A.A.F. 1996) (noting that "[t]he language that Congress chose to permit [waiver of the right to appellate review] is both precise and particular"). It would defy logic to conclude that while an accused may not waive the right to complete appellate review as part of a PTA, she can nonetheless sidestep Article 61, UCMJ, and the temporal protections built into it by virtue of a "waive all waivable motions" provision in a PTA, permitting ... an accused to, in effect, waive the right to complete appellate review as part of a PTA.

We decline to construe Article 66(c), UCMJ, in such a fashion that the particular and protective waiver procedure provided by Article 61, UCMJ, and its accompanying rules can be circumvented in this way, which would be at odds with the overall structure of the UCMJ. Either a case is subject to a complete appellate review under Article 66(c), UCMJ, or it is not because such review was waived — after trial and sentencing — under Article 61, UCMJ. *See Miller*, 62 M.J. at 472. If an appellant elects to proceed with Article 66, UCMJ, review, as in this case, then the CCA is commanded *by statute* to review the entire record and approve only that which "should be approved." A fortiori, the CCAs are required to assess the entire record to determine whether to leave an accused's waiver intact, or to correct the error. *Cf. United States v. Tardif*, 57 M.J. 219, 223 (C.A.A.F. 2002).

Contrary to the Government's claims of Armageddon, there is nothing new about today's decision, and it does not

mean that a "waive all waivable motions" provision or unconditional guilty plea is without meaning or effect. Waiver at the trial level continues to preclude *an appellant* from raising the issue before either the CCA or this Court. *See Gladue*, 67 M.J. at 313–14. And a "waive all waivable motions" provision or unconditional guilty plea continues to serve as a factor for a CCA to weigh in determining whether to nonetheless disapprove a finding or sentence. Article 66, UCMJ, is neither limitless nor standardless, *Nerad*, 69 M.J. at 145–46, and CCAs are presumed to know the law and follow it, *see United States v. Schweitzer*, 68 M.J. 133, 139 (C.A.A.F. 2009).

**B.**

In this case, the CCA provided a detailed explanation for disapproving and merging offenses despite Appellee's waiver, holding that "[t]his deviation from our past treatment and application of waiver is warranted by the facts of this case .... in that … the charging scheme grossly exaggerates the appellant's criminality." *Chin*, 2015 CCA LEXIS 241, at *10–12, 2015 WL 4039595, at *3–4. The CCA disapproved specifications based on a legal standard, citing the fact that "the unreasonable multiplication of charges [was] so plainly presented in this case." 2015 CCA LEXIS 241, at *12, 2015 WL 4039595, at *4. That rationale is based on the legal standard this Court gave them, *see Nerad*, 69 M.J. at 147, and the CCA's action was well within the limitations of its Article 66(c), UCMJ, review. *See United States v. Anderson*, 68 M.J. 378, 386 (C.A.A.F. 2010).

**III. JUDGMENT**

The certified question is answered in the negative, and the decision of the United States Air Force Court of Criminal Appeals is affirmed.

Judge STUCKY, with whom Judge OHLSON joins, dissenting.

A valid waiver of an issue at trial leaves no error to correct on appeal. *United States v. Campos*, 67 M.J. 330, 332 (C.A.A.F. 2009); *United States v. Gladue*, 67 M.J. 311, 313 (C.A.A.F. 2009) (holding that a valid trial waiver extinguishes the error). Nevertheless, the majority concludes, in effect, that a waiver instead places an issue in a kind of deathlike suspended animation, which the Court of Criminal Appeals (CCA) has the unfettered discretion to reanimate. *See United States v. Chin*, __ M.J. __, __ (4) (C.A.A.F. 2016). I can find no support in the UCMJ for such an assertion. Therefore, I respectfully dissent.

To reach its conclusion, the majority opinion relies on faulty readings of Articles 61 and 66, Uniform Code of Military Justice (UCMJ),10 U.S.C. §§ 861, 866 (2012). Article 66(c) provides that a CCA "may affirm only such findings of guilty and the sentence … as it finds correct in law and fact and determines, on the basis of the entire record, should be approved." The majority reads the "should be approved" language in isolation from the rest of Article 66 and the remainder of the UCMJ. By doing so, it concludes that the CCAs have plenary review of the findings and sentence such that they may ignore an accused's valid waiver of an issue at trial if they determine the issue deserves new life. *Chin*, __ M.J. at __ (5). I disagree.

The CCAs were established by the Judge Advocates General at the direction of Congress. Article 66(a), UCMJ. They are, therefore, Article I courts. Such courts are of limited jurisdiction, possessing only the powers specifically granted to them by the Constitution and statute. *See United States v. Lopez de Victoria*, 66 M.J. 67, 69 (C.A.A.F. 2008); *see also Clinton v. Goldsmith*, 526 U.S. 529, 533–34 (1999); *In re United Mo. Bank of Kansas City, N.A.*, 901 F.2d 1449, 1451–52 (8th Cir. 1990).

"Our duty in interpreting a statute is to implement the will of Congress, 'so far as the meaning of the words fairly permit[].'" *United States v. Spicer*, 71 M.J. 470, 475 (C.A.A.F. 2013) (alteration in original) (quoting *Sec. & Exch. Comm'n v. Joiner*, 320 U.S. 344, 351 (1943)). "Statutory lan-

guage cannot be construed in a vacuum. It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Sturgeon v. Frost*, 194 L. Ed. 2d 108, 121 (2016) (internal quotation marks omitted) (citation omitted); *see United Sav. Ass'n of Texas v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365, 371 (1988) ("Statutory construction … is a holistic endeavor.").

The "should be approved" language does not grant the CCAs authority to disregard valid waivers and review the whole case as if a waiver never occurred, as the majority would have it. *See* S. Rep. No. 81-486, at 28 (1949), *reprinted in* 1950 U.S.C.C.A.N. 2222, 2254 (The CCA "shall affirm a finding of guilty of an offense or a lesser included offense (see art. 59) if it determines that the finding conforms to the weight of the evidence and there has been no error of law which materially prejudices the substantial rights of the accused.").

The majority also argues that an accused's agreement to waive all waivable motions in effect waives appellate review altogether, something an accused cannot do until after the convening authority acts on his case. *See Chin*, __ M.J. at __, (5) (citing Article 61, UCMJ; Rule for Courts-Martial (R.C.M.) 705(c)(1)(B)). Article 61(a) does limit an accused's ability to waive his right to appellate review to within ten days after the convening authority's action is served on the accused or his counsel. But a waiver of all waivable motions is not a waiver of the right to appeal and is perfectly compatible with Article 61(a) and R.C.M. 705(c)(1)(B).

The purpose of Article 61(a) is to permit an accused who does not want to appeal his conviction or sentence to separate from the service promptly, without having to wait for appellate review of his case. H.R. Rep. No. 98-549, at 15 (1983), *reprinted in* 1983 U.S.C.C.A.N. 2177, 2181. It does not prohibit an accused from waiving all waivable motions at trial; nor does it grant a CCA the authority to ignore an accused's valid waiver.

R.C.M. 705(c)(1)(B) is a corollary to Article 61(a). It prohibits a term or condition in a plea agreement that deprives an accused of "the complete and effective exercise of post-

trial and appellate rights." It does not prohibit an accused from waiving trial issues. In fact, R.C.M. 705(c) is intended

> to ensure that certain fundamental rights of the accused cannot be bargained away while permitting the accused substantial latitude to enter into terms or conditions as long as the accused does so freely and voluntarily. Subsection (1)(B) lists certain matters which cannot be bargained away. This is because to give up these matters would leave no substantial means to ensure judicially that the accused's plea was provident, that the accused entered the pretrial agreement voluntarily, and that the sentencing proceedings met acceptable standards.

*Manual for Courts-Martial, United States*, Analysis of the Rules for Courts-Martial app. 21 at A21-40 (2012 ed.) (emphasis added). R.C.M. 705(c)(1)(B) and Article 61(a) are congruent: an accused may not waive his post-trial rights in a plea agreement and may only waive his right to appeal after the convening authority acts on his case.

Appellee's agreement to waive all waivable motions did not deprive him of the right to appeal. He did not bargain away those fundamental rights R.C.M. 705(c) was meant to protect, such as contesting the jurisdiction of the court-martial, the voluntariness and providence of his guilty pleas, his sentence, and the effectiveness of his counsel. That is all the law requires.

The majority asserts that, despite the CCA's power of reanimation, a "waive all waivable motions" provision or an unconditional guilty plea still has meaning and effect because it "preclude[s] *an appellant* from raising the issue before either the CCA or this Court.... [and] continues to serve as a factor for a CCA to weigh in determining whether to nonetheless disapprove a finding or sentence." *Chin*, __ M.J. at __ (6). Beyond matters of law and application, the majority's interpretation of Article 66(c) is logically inconsistent on its own terms. It gives a CCA unfettered discretion to impose its vision of fairness on the parties but prohibits the appellant from suggesting what is fair or which waived issues the CCA should consider. The CCA would rule by judicial fiat, as in this case, without giving the parties notice

and the opportunity to argue their positions. This is a novel conclusion that smacks of judicial paternalism of the highest order.

The majority implies that the decision of the lower court in this case was more than equity because: (1) it gave a "detailed explanation" as to why it deviated from its past treatment of waiver to review the unreasonable multiplication of charges issue—"the charging scheme grossly exaggerates the appellant's criminality"; and (2) "a 'waive all waivable motions' provision or unconditional guilty plea continues to serve as a factor for a CCA to weigh in determining whether to nonetheless disapprove a finding or sentence." *Chin*, __ M.J. at __ (6). But the CCA's explanation for deviating from past practice is nothing more than a repetition of the definition of unreasonable multiplication of charges, *see United States v. Campbell*, 71 M.J. 19, 24 (C.A.A.F. 2012) ("unduly exaggerate an accused's criminality"); the same definition that would apply if Appellee had raised the issue at trial. The fact that the CCA may, but is not required to, consider that an accused waived the issue at trial is no standard at all. It is no more than the uncertain measure of the conscience of the particular judges presiding over the case—in other words, pure equity.

Plea agreements play a crucial role in the military justice system. They afford an accused the opportunity to negotiate for reduced charges, a reduced sentence, or both by pleading guilty and giving up some of his constitutional and statutory rights. The finality and enforceability of the waiver is one of the accused's most important bargaining chips in negotiating a plea agreement. Without it, the government has less incentive to engage in such negotiations.

Today, the majority puts the government on notice: do not trust that a CCA will enforce an accused's valid waiver of an issue at trial. The CCA may now consider such inchoate issues on its whim. I disagree and, therefore, dissent.